FILED

MAR 04 2013

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| EDWARD HAROLD SCHAD,<br><br>Petitioner - Appellant,<br><br>v.<br><br>CHARLES L. RYAN, Arizona Department of Corrections,<br><br>Respondent - Appellee. | No. 07-99005<br><br>D.C. No. CV-9702577-PHX-ROS<br>District of Arizona,<br>Phoenix<br><br>AMENDED ORDER |

Before: THOMAS, Circuit Judge and Capital Case Coordinator

The full court has been advised of the petition for rehearing and rehearing en banc. Pursuant to the rules applicable to capital cases in which an execution date has been scheduled, a deadline was set by which any judge could request a vote on whether the panel's orders should be reheard en banc.

A judge requested a vote on whether to hear the panel's orders en banc, and a vote was conducted. A majority of the active, non-recused judges eligible to vote on the en banc call voted against rehearing the panel's orders en banc. Therefore, the petition for rehearing en banc is DENIED. No further petitions for panel rehearing or rehearing en banc will be entertained. En banc proceedings with

respect to the orders are concluded. The panel will issue a separate order concerning the petition for panel rehearing.

FILED

MAR 04 2013

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR PUBLICATION

Schad v. Ryan, No. 07-99005

Circuit Judge **TALLMAN,** with whom Chief Circuit Judge **KOZINSKI** and Circuit Judges **O'SCANNLAIN**, **BYBEE**, **CALLAHAN**, **BEA**, **M. SMITH** and **IKUTA** join**,** dissenting from the denial of rehearing en banc:

The majority's stay of execution and remand order in *Schad* openly defies the Supreme Court's directive in this very case and takes our habeas jurisprudence down a road that has already been rejected.[1] Judges Reinhardt and Schroeder, writing for a divided panel, fail to appropriately apply the substantive Supreme Court precedents in *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011), and *Martinez v. Ryan*, 132 S. Ct. 1309 (2012). Their order needlessly adds years of additional delay in carrying out the sentence imposed on a twice convicted murderer by willfully ignoring the Supreme Court's express guidance to apply *Pinholster* here and by refusing to interpret *Martinez*, 132 S. Ct. at 1315, narrowly as the Court has commanded. By failing to take this case en banc our court has unfortunately allowed the majority to stretch *Martinez* beyond its limited scope, and permitted Schad to bolster a previously exhausted *Strickland* claim with new federal habeas

---

[1] Order, Schad v. Ryan, No. 07-99005 (9th Cir. Feb. 26, 2013), ECF No. 115 [hereinafter Majority Order]. Judge Graber dissented on the grounds that Schad could not establish prejudice for his previously exhausted ineffective assistance of counsel claim.

1

evidence in clear violation of *Pinholster*.

After the panel previously remanded this case to the district court for an evidentiary hearing, the Supreme Court vacated the panel's opinion, instructing it to apply *Pinholster*. *Ryan v. Schad*, 131 S. Ct. 2092, 2092 (2011). In response, the panel initially amended its opinion to apply *Pinholster,* correctly recognizing that AEDPA forecloses a federal court's ability to consider on the merits new facts not raised before a state court. *Schad v. Ryan*, 671 F.3d 708, 722 (9th Cir. 2011) (per curiam).

In 2012, Schad again sought review of his case by filing a Motion to Vacate and Remand in light of *Martinez*, and the same panel properly denied the motion. Order, Schad v. Ryan, No. 07-99005 (9th Cir. July 27, 2012), ECF No. 91. Schad then attempted to raise *Martinez* once more in a petition for certiorari, but the Supreme Court denied review, *Schad v. Ryan*, 133 S. Ct. 432, 432 (2012), and he unsuccessfully argued the *Martinez* IAC claim again on his motion for rehearing, *Schad v. Ryan*, 133 S. Ct. 922, 922 (2013).[2] Bereft of any legally significant

---

[2] In his petition for certiorari, which was filed the same day that the panel denied his Motion to Vacate and Remand, Schad relied on *Martinez* extensively and specifically invoked his motion before the panel raising the same arguments, noting that the panel had not yet "acted on the motion." Petition for Writ of Certiorari at i, iv, 14, Schad v. Ryan, 133 S. Ct. 432 (2012) (No. 12-5534), 2012 WL 6947825. In his reply brief, he again relied extensively on *Martinez* and noted that he had "presented the [*Martinez*] issue to the lower court who declined to consider it." Reply to Brief in Opposition to Petition for a Writ of Certiorari at

change of circumstances in the interim, the majority has now completely reversed its prior ruling and has again remanded the case to the Arizona district court for a second time, directing it to consider the "new" *Martinez* claim (which the majority now characterizes as procedurally defaulted), while back-handedly dispatching *Pinholster* in a mere footnote.

I

This panel should have stood by its original ruling; *Pinholster* properly applies to this case, and it bars Schad from introducing new mitigating evidence in federal court for a claim he has previously exhausted before the Arizona courts. In *Pinholster*, the Supreme Court held that if a petitioner's claim of ineffective assistance of trial counsel has been adjudicated in a state court proceeding, federal habeas review of that claim is restricted to the record that was before the state court. 131 S. Ct. at 1398–1401. As the Court there explained, "[f]ederal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings." *Id*. at 1401 (alteration in original).

---

2-4, Schad v. Ryan, 133 S. Ct. 432 (2012) (No. 12-5534), 2012 WL 6947823.  In his petition for rehearing, he once again asked the Court to "enter an order remanding these proceedings to the court below for further consideration in light of *Pinholster* . . . *Martinez v. Ryan* . . . and its progeny." Petition for Rehearing at 11, Schad v. Ryan, 133 S. Ct. 922 (2013) (No. 12-5534), 2012 WL 7006576.

3

Pinholster and Schad's claims are, for all relevant purposes, factually indistinguishable. Both filed petitions for post-conviction relief, arguing that their trial counsel rendered ineffective assistance of counsel by failing to investigate and present certain mitigating evidence at sentencing. *Schad*, 671 F.3d at 721; *Pinholster*, 131 S. Ct. at 1396. Then in federal habeas proceedings, both petitioners reasserted their initial claims of ineffective assistance of sentencing counsel, attempting to bolster them with additional facts. *Schad*, 671 F.3d at 721–22; *Pinholster*, 131 S. Ct. at 1396–97.

As in *Pinholster*, the legal basis for Schad's ineffective assistance of counsel claim is the same now as it was before the initial post-conviction state court, and merely improving the evidentiary support does not provide a basis for a federal court to overturn a state court's reasoned opinion. We were reversed in *Pinholster* for permitting the petitioner to do just that, and thus, we should have gone en banc in this case to correct the majority's failure to apply Supreme Court precedent and to vacate the unwarranted stay of execution.

II

The majority attempts to circumvent the Supreme Court's holding in *Pinholster* by conjuring up a "new" *Strickland* claim, based on additional evidence identified for the first time in federal habeas proceedings. The problem with the

4

majority's "new claim" theory is that there is nothing new about Schad's current claim. It attacks the sufficiency of the sentencing investigation by trial counsel by alleging she was ineffective in not doing enough to show that Schad was a sympathetic person due to his poor upbringing.

In state post-conviction relief proceedings, Schad argued that his trial counsel rendered ineffective assistance by failing to present certain mitigating evidence at sentencing describing the psychological and physical abuse Schad endured as a child. *See Schad*, 671 F.3d at 721. In federal habeas proceedings, Schad claimed that his trial counsel was ineffective for failing to present additional evidence of this abuse, including new declarations "discussing Schad's childhood and its effect on his mental health." *Id*.

At bottom, both claims are premised on trial counsel's failure to present mitigation evidence relating to the physical and psychological impact of the abuse suffered by Schad.[3] *Pinholster* could not be more clear on this point. Merely bolstering the evidentiary basis for the claim does not transform Schad's

---

[3] Schad's characterization of his former and current claim demonstrate their singular origin. Schad describes the *Strickland* claim raised in post-conviction relief proceedings as "not properly developed" and the *Strickland* claim he currently advances as "completely developed." Reply Brief for Petitioner-Appellant at 7, Schad v. Ryan, No. 07-99005 (9th Cir. Jan. 11, 2013), ECF No. 100-1. Pinholster made the same argument regarding evidence of organic brain impairment to try to excuse his horrendous crime.

previously adjudicated *Strickland* claim into a novel claim not bound by *Pinholster* or the state court record. *See Pinholster*, 131 S. Ct. at 1401. The majority improperly concluded that Schad's "new factual allegations" transformed Schad's exhausted *Strickland* claim, adjudicated on the merits in state courts, into a "new" and procedurally defaulted claim. Majority Order at 12.

### III

After declaring that Schad has advanced a "new" and procedurally defaulted claim, the majority concluded that Schad may obtain review of his fully developed *Strickland* claim, complete with the new evidence identified in federal habeas proceedings. The majority relies on a tortured construction of the Supreme Court's opinion in *Martinez* to arrive at this astonishing conclusion.

The Court in *Martinez* held that "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial review collateral proceeding, . . . counsel in that proceeding was ineffective." *Martinez*, 132 S. Ct. at 1320. Purportedly applying this exception, the majority stayed Schad's execution date after concluding that Schad's claim of ineffective assistance of trial counsel was substantial. Majority Order at 15. The majority remanded to the district court for determination of whether Schad's post-conviction counsel was ineffective. *Id*.

6

The majority's reliance on *Martinez* is misguided and without basis. *Martinez* is not applicable here because the Arizona state court previously adjudicated Schad's *Strickland* claim on the merits, and the district court did not find Schad's claim to be procedurally defaulted. The majority's extraordinary efforts to unilaterally declare that Schad's current *Strickland* claim is procedurally defaulted defy the Supreme Court's instructions to apply *Pinholster*, and amount to a transparent attempt to further delay Schad's execution date. Schad cannot rely on *Martinez* to obtain relief because there is no procedurally defaulted claim, and no need to establish either cause or prejudice. The ephemeral default declared is only in the mind of the panel majority. This case is controlled by *Pinholster*, not *Martinez*.

Furthermore, even if *Martinez* applied, Schad does not advance a substantial ineffective assistance of trial counsel claim. *See* Majority Order at 17–18 (Graber, J., dissenting). After an independent review of all evidence Schad offered in federal habeas proceedings, the district court concluded that the new mitigation evidence was "either cumulative or . . . contradictory to the portrait of Petitioner that trial counsel presented at sentencing" and would not have altered the outcome. *Schad v. Schriro*, 454 F. Supp. 2d 897, 944 (D. Ariz. 2006).

As Judge Graber trenchantly concluded in her dissent, Schad cannot

7

demonstrate prejudice under the applicable standard of *Brecht v. Abrahamson*, 507 U.S. 619 (1993). To establish prejudice, Schad "must establish not merely that the [alleged error] . . . created a *possibility* of prejudice, but that [it] worked to his *actual* and substantial disadvantage, infecting the entire proceeding with constitutional error." *Stokley v. Ryan*, 705 F.3d 401, 401 (9th Cir. 2012) (alterations in original) (internal quotation marks omitted). This case did not meet the threshold requirement of exceptional circumstances through either the lens of *Pinholster* or the prejudice analysis articulated in *Stokley*. Majority Order at 17–18 (Graber, J., dissenting). Our mandate should have issued automatically following the Supreme Court's denial of Schad's petition for certiorari which rejected his *Martinez* argument. *See* Fed. R. App. P. 41; *Beardslee v. Brown*, 393 F.3d 899, 901 (9th Cir. 2004). A *Martinez* remand now only postpones proceedings without any hope of altering the legitimate sentence imposed.

IV

If these continuing *Martinez* remands are routinely permitted, our circuit will have failed to faithfully apply the heightened standard of review mandated by AEDPA by permitting Schad and other capital defendants to pursue bolstered versions of their previously exhausted *Strickland* claims. The majority's order simply encourages state prisoners to evade *Pinholster* by adding one or more

8

factual allegations when re-pleading an ineffective assistance of counsel claim in federal habeas proceedings. The finality of death penalty litigation will be frustrated if courts view these embellished exhausted claims to be "new claims" that were procedurally defaulted under *Martinez*, and endless remands and further rounds of appeals will follow.[4]

The majority's order perversely incentivizes prisoners and their counsel to locate additional, even cumulative, evidence during federal habeas proceedings. Applying the majority's logic, this evidence may then be found to have fundamentally altered and transformed claims that were adjudicated during state post-conviction relief proceedings into new claims not bound by *Pinholster* or the state court record. Left unchecked, the majority's conclusion contravenes the Supreme Court's instructions that "[i]t would be contrary to [the] purpose [of AEDPA] to allow a petitioner to overcome an adverse state-court decision with

---

[4] This was precisely the outcome predicted by Justices Scalia and Thomas in their *Martinez* dissent:

> "I *guarantee* that an assertion of ineffective assistance of trial counsel will be made in *all* capital cases from this date on, causing (because of today's holding) execution of the sentence to be deferred until either that claim, or the claim that appointed counsel was ineffective in failing to make that claim, has worked its way through the federal system."

132 S. Ct. at 1324 (Scalia, J., dissenting).

9

new evidence introduced for the first time in federal habeas court and reviewed by that court in the first instance effectively de novo." *Pinholster*, 131 S. Ct. at 1399.

The majority's decision to stay Schad's execution date and remand to the district court was erroneous. We should have reheard this case en banc and corrected this unsupported order before the Supreme Court, for a second time, admonishes us for not applying *Pinholster*.

I respectfully dissent.

FILED

MAR 04 2013

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**CALLAHAN**, Circuit Judge, joined by **KOZINSKI**, Chief Circuit Judge, and **O'SCANNLAIN**, **TALLMAN**, **BYBEE**, and **M. SMITH**, Circuit Judges, dissenting from the denial of rehearing en banc:

On August 1, 1978, Lorimer Grove left his home in Bisbee, Arizona, driving his new Cadillac to visit his sister in Everett, Washington. *Schad v. Ryan*, 671 F.3d 708, 711 (9th Cir. 2011) (per curiam). He never made it out of the state. His body was found eight days later on the side of the road near Prescott. *Id.* Edward Schad had strangled him – reducing the circumference of his neck by four inches and breaking a bone in the process – and stolen his car, credit cards, and jewelry. *Id.* at 712. Schad murdered Grove while on parole after serving 9½ years for his role in the strangulation of another man, Clare Odell Mortensen, in Utah. *See* Judith Acree, *Judge Moves Schad Trial to Flagstaff*, The Courier, May 2, 1985, at 1A.

Schad was first convicted on October 5, 1979, and sentenced to death on December 27, 1979. *Schad v. Schriro*, 454 F. Supp. 2d 897, 904 (D. Ariz. 2006). Schad was convicted on retrial on June 27, 1985, and sentenced to death for a second time, by a second judge, on August 29, 1985. *Id.*; *Schad v. Arizona*, 111 S. Ct. 2491, 2491 (1991). Now, over <u>33 years</u> after he was first convicted and <u>after</u> the Supreme Court denied Schad's petition for certiorari, the panel majority has "reconsidered" its own prior decision, likely giving Schad another six years to

1

live.[1] For the reasons discussed by Judge Tallman, the panel majority's legal basis is unsound and, as the district court already concluded, Schad's ineffective assistance claim is meritless. *See Schriro*, 454 F. Supp. 2d at 940–44. The sole point of this exercise was to buy Schad more time – the very thing he took from Lorimer Grove and Clare Odell Mortensen. Victims have rights, too. The panel majority's decision here cavalierly disregards those rights in favor of a twice-convicted murderer who has already had the benefit of 33 years of legal process. I respectfully dissent.

---

[1] Historically, it has taken capital habeas cases an average of 3.1 years to resolve in federal district court. Nancy J. King et al., *Executive Summary: Habeas Litigation in U.S. District Courts* 7 (2007), *available at* https://www.ncjrs.gov/pdffiles1/nij/grants/219558.pdf (last visited Mar. 4, 2013). In Arizona capital habeas cases, it has taken an average of 2.8 years from the date of the district court's decision until this court issues a decision, and it has generally taken another 0.7 years before the Supreme Court issued a decision on a petition for writ of certiorari. Peg Bortner & Andy Hall, *Summary of Death Sentence Process: Data Set I Research Report to Arizona Capital Case Commission* 30 (2001), *available at* https://www.azag.gov/ccc/final-report (last visited Mar. 4, 2013).